United States District Court
Southern District of Texas
**ENTERED**
March 13, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN RICHARD SMITH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. H-15-1782 |
| | § | |
| BEN TAUB HOSPITAL, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the motion for summary judgment filed by defendant Harris County Hospital District (Docket Entry No. 50) and the motion and supplemental motion for summary judgment filed by defendant Harris County (Docket Entries No. 64, 67). Plaintiff filed *pro se* responses opposing the motions. (Docket Entries No. 59, 69, 70.)

Having considered the motions, the responses, the pleadings, the record, and the applicable law, the Court **GRANTS** the motions and supplemental motion for summary judgment and **DISMISSES** this lawsuit for the reasons that follow.

### I. BACKGROUND AND CLAIMS

Plaintiff, a former Harris County Jail inmate and currently a state prisoner, claims in this *pro se* section 1983 lawsuit that he sustained a torn Achilles tendon while playing handball at the jail. A jail physician examined the injury and transferred plaintiff to Ben Taub Hospital ("BTH") Emergency Center for further work-up. The physician at BTH

examined plaintiff, ran tests, and ordered x-rays of the injury, and diagnosed the injury as a torn Achilles tendon. According to plaintiff, the physician told him surgery would be scheduled for the next day, and that he signed a consent form and was "prepped" for surgery. Plaintiff complains that surgery was subsequently cancelled and he was returned to the Harris County Jail. He states that he was later seen at BTH for follow-up, but that "nothing was ever done." Plaintiff specifically alleges the following:

> Doctors at Ben Taub examined me and said the Achilles was torn and needed the surgery. The hospital never did an MRI to see how much damage was done to the tendon. They never gave me any medication for pain, but they did get me to sign a consent form for surgery and began to prep me for surgery. The next day the hospital decided they didn't want to risk a surgery and sent me away in a cast, still without anything for pain. . . . Two years later I'm still in pain[.]

(Docket Entry No. 50-3, p. 1.) Plaintiff's primary complaint is that surgery was needed to correct the damaged tendon, and that BTH decided to forego surgery. He also complains that nothing was done for him at Harris County Jail following his visit to BTH, and that his injury was allowed to worsen. He seeks monetary damages.

Plaintiff names as defendants Ben Taub Hospital and Harris County. No physicians or other medical care providers have been named. The defendants argue that they are not liable to plaintiff under section 1983 and that, at most, plaintiff has raised a common-law claim for negligence against the physicians who treated him.

2

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). A fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party. *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.* For any matter on which the non-movant would bear the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du–Ra–Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. HARRIS COUNTY HOSPITAL DISTRICT

In its motion for summary judgment (Docket Entry No. 50), Harris County Hospital District ("HCHD"), d/b/a Harris Health System, d/b/a Ben Taub Hospital argues that (1) plaintiff complains of medical acts or omissions by "the hospital," but HCHD is not licensed

to practice medicine; (2) HCHD did not employ the physicians seen by plaintiff and neither *respondeat superior* nor vicarious liability apply to section 1983; (3) section 1983 liability can be imposed against HCHD only upon a showing of an official custom or policy that was the cause in fact of an underlying constitutional violation and plaintiff establishes no such policy or custom.

In support of its first argument, HCHD states that BTH is owned and operated by HCHD. HCHD is a unit of local government of the State of Texas and was created pursuant to the Texas Constitution, Article 9, Section 14, to provide medical and hospital care to needy inhabitants of Harris County. *See* TEX. HEALTH & SAFETY CODE § 281.002. As defendant correctly argues, the practice of medicine is restricted to licensed physicians, and there is no "corporate practice of medicine" recognized in Texas. *See* TEX. OCC. CODE § 164.052(a)(17) ("[A] physician . . . commits a prohibited practice if that person: directly or indirectly aids or abets the practice of medicine by a person, partnership, association, or corporation that is not licensed to practice medicine by the board.") Accordingly, plaintiff's allegations of what "the hospital" did or did not do for his injury fails to state a claim, as BTH did not, and could not, practice medicine.

In its second argument, defendant HCHD states that HCHD did not employ the physicians seen by plaintiff and that, regardless, neither *respondeat superior* nor vicarious liability apply to section 1983 claims. In support, defendant submits the affidavit of Carla Golemon, Director of Human Resources for HCHD, in which she testifies as follows:

> As Director of Human Resources, my job duties include, among other things, oversight of the human resources department of HCHD and knowledge of the individuals employed by HCHD. Physicians who provide health care services to patients at Ben Taub Hospital are not employed by HCHD. Such physicians are independent contractors who are granted privileges to practice at Ben Taub Hospital. The physicians who provided care to Plaintiff are not employees of HCHD and were not employees of HCHD at the time of the care complained of in Plaintiff's complaint.

(Docket Entry No. 50-4, p. 1.)

Even assuming the physicians were defendant's employees, a local governmental entity such as HCHD cannot be held liable under section 1983 on a theory of *respondeat superior* or vicarious liability for the actions of its employees. *See Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 691 (1978); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979).

Because plaintiff's medical care at BTH was provided by independent-contractor physicians and defendant HCHD exercised no professional medical judgment regarding plaintiff's care, plaintiff cannot prevail on his claim that defendant was "deliberately indifferent" to his serious medical needs regarding his medical care.

Regardless, a governmental entity such as HCHD can be sued and subjected to liability for monetary damages under section 1983 only if its official policy or customary practice caused the deprivation of a constitutional right. *See Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). That is, to hold a governmental entity liable under section 1983, a plaintiff must show that unconstitutional actions of officials resulted from an official

policy or customary practice. *Monell*, 436 U.S. at 694. An official policy or customary practice is recognized as (1) a policy, statement, ordinance, regulation, or decision that is officially adopted and promulgated by the lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents policy. Actual or constructive knowledge of such custom must be attributable to the governing body or to an official to whom that body had delegated policy-making authority. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Single instances of certain actions, behaviors, or decisions, even if unconstitutional, do not prove, or allow inference of, a policy, custom, or practice. *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001).

Plaintiff presents no probative summary judgment evidence of a policy, custom, or practice that caused a violation of his constitutional rights in the instant case. In a request for production to defendant, plaintiff requested "Any and all rules, regulations, and policies of Ben Taub Hospital Harris County Healthy [sic] about treatment of Achilles tendon injuries." (Docket Entry No. 48, p. 3.) Defendant responded that it "does not have specific rules, regulations, and policies about treatment of Achilles tendon injuries." *Id.* Plaintiff presents nothing to the contrary.

In short, defendant HCHD is not licensed by the State of Texas to make medical decisions regarding treatment of patients at BTH. The physicians who treated plaintiff at BTH are not employed by HCHD. Even assuming they were employed by HCHD, HCHD is not liable for their actions under the doctrines of *respondeat superior* or vicarious liability for purposes of section 1983 liability. Moreover, plaintiff presents no probative summary judgment evidence of an official policy or customary practice of BTH or HCHD that caused the deprivation of his constitutional rights. Plaintiff establishes no basis for holding defendant HCHD liable under section 1983, and HCHD is entitled to summary judgment dismissal of plaintiff's claims.

Even assuming HCHD could be held liable under section 1983, plaintiff fails to establish deliberate indifference, as is discussed, *infra*.

## IV. HARRIS COUNTY

In its motion and supplemental motion for summary judgment (Docket Entries No. 64, 67), defendant Harris County seeks summary judgment dismissal of plaintiff's claims brought against it as a municipality or local government. As was the case with HCHD, Harris County is a local government entity. To sue a municipality or local government under section 1983, a plaintiff must demonstrate (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski*, 237 F.3d at 578; *see also Monell*, 436 U.S. at 578. Plaintiff presents no probative

8

summary judgment as to any of these factors, and fails to establish any basis for holding Harris County liable under section 1983.

Regardless, plaintiff fails to establish deliberate indifference, as is discussed below.

## V. DELIBERATE INDIFFERENCE

Plaintiff does not name as a defendant any physician or other medical care provider who provided, or failed to provide, medical care in his case. However, even assuming he had, he does not establish that he was a victim of deliberate indifference.

Because he was a pretrial detainee at Harris County Jail and not a convicted inmate, plaintiff's deliberate indifference claims arise from the alleged deprivation of substantive due process under the Fourteenth Amendment. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir.1998). Nevertheless, the Fifth Circuit Court of Appeals applies the same standard for assessing constitutional claims of denial of medical care to pretrial detainees under the Fourteenth Amendment as it does for denial of medical care to convicted inmates under the Eighth Amendment. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

To prevail under the "extremely high standard" of deliberate indifference, a prisoner "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "An incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Id.* Moreover, "unsuccessful medical

treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Id.* Deliberate indifference is especially difficult to show when the inmate has been provided with ongoing medical treatment. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The decision not to provide additional or different treatment "is a classic example of a matter for medical judgment" rather than a basis for a deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d at 756.

Moreover, an inmate's disagreement with medical treatment does not state a claim for deliberate indifference. *Norton v. Dimizana*, 122 F.3d 286, 292 (5th Cir. 1997). Simple or even heightened negligence is insufficient to establish deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Allegations amounting to negligent medical care cannot support a claim under section 1983. Records showing that an inmate was given medical examinations, treatments, and medications may rebut an inmate's allegations of deliberate indifference in denying or delaying medical care. *See Varnado v. Lynaugh*, 920 F. 2d 320, 321 (5th Cir. 1991).

Defendant submitted under seal two lengthy sets of medical records for plaintiff's medical care and treatment at the Harris County Jail and, by inclusion, BTH. (Docket Entries No. 65, 68.) These records show that plaintiff was examined by Harris County Jail medical staff following his sports accident at the jail on April 8, 2014, and that jail physician Dr. Griffin ordered his immediate transport to the Ben Taub Hospital Emergency Center "for evaluation and treatment." Plaintiff was given ibuprofen for pain relief prior to transport.

(Docket Entry No. 68, pp. 43–44.) Dr. Griffin's chart entry and hospital referral do not state that plaintiff needed surgery or that he was being transported to BTH for surgery.

The parties agree that physicians at BTH examined and evaluated plaintiff's injury, and diagnosed the injury as a torn left Achilles tendon. Although plaintiff claims that the physicians initially opted for a surgical repair, it is uncontested that, at some point prior to his discharge the next day, the physicians reconsidered that decision and opted for a non-surgical approach. Plaintiff was discharged from BTH on April 9, 2014, and was returned to Harris County Jail. An entry in plaintiff's medical records shows that he returned from BTH with his lower left leg wrapped in an ACE bandage and in a partial cast. (Docket Entry No. 65-1, p. 66.) Physicians ordered a bottom bunk pass and crutches, ibuprofen and hydrocodone/acetaminophen for pain, and for plaintiff to return to BTH for follow-up on May 2, 2014. *Id.*

Plaintiff returned to BTH Orthopedics on April 24, 2014, for a follow-up. *Id.*, at 35. His splint was removed, and he was ordered to wear a fracture walker boot with heel lifts. Crutches were continued, as were his pain medications. He was told to return in four weeks for lower heel lift. *Id.*, p. 36. When plaintiff was seen at the Harris County Jail clinic the next day, the physician noted that he was wearing a leg brace. The physician prescribed tramadol for pain relief. (Docket Entry No. 68, p. 51–52.)

Plaintiff was again seen at BTH Orthopedics on May 21, 2014. X-rays were taken, and he was told to continue wearing the fracture walker boot with heel lifts to help avoid

possible re-injury. Pain medications were ordered continued, and he was told to return in four weeks for further follow-up. (Docket Entry No. 65, pp. 30–35.) Dr. Griffin at Harris County Jail re-examined plaintiff on May 27, 2014, and renewed his tramadol prescription. Dr. Griffin ordered that plaintiff continue using the heel lift walking boot and that "ortho" recommendations be followed. (Docket Entry No. 68, pp. 57–58.)

The medical records show that plaintiff was next seen by Dr. Fernando Nussenbaum on June 19, 2014, at the BTH Orthopedic Surgery Clinic. (Docket Entry No. 68, pp. 60–61.) According to the chart, plaintiff reported that his symptoms were improving and that he was instructed on range of motion exercises. Dr. Nussembaum performed clinical tests and wrote that non-operative management of the Achilles tendon injury would continue. Plaintiff was ordered to continue wearing the walking boot without lifts for two weeks, then transition to regular shoes. Motrin was ordered for pain relief, and plaintiff was told to return in four weeks. Upon his return to jail, plaintiff was seen by jail physician Dr. Casillas, who encouraged plaintiff to continue taking his prescribed medications and to return to clinic as needed. *Id.*, p. 64.

Dr. Casillas saw plaintiff again on July 10, 2014. He observed that plaintiff was ambulatory and wearing a left leg brace. His chart entry noted that plaintiff denied any medical complaints at that time. (Docket Entry No. 68, pp. 66–67.) Plaintiff presented to the triage nurse on July 19, 2014, complaining of left lower extremity pain. He was noted as ambulatory, with minimal ankle edema and no limited range of motion. He was instructed

to keep the leg elevated. It was recommended that he make a clinic appointment and to return to clinic as needed.

The Court notes that, at this point, there is a time break in plaintiff's medical records until January 30, 2015. Although plaintiff claims that this six-month break in medical services proves that defendants were deliberately indifferent to his medical needs, no deliberate indifference is established. It is clear from plaintiff's medical records that he was able to obtain medical services upon request, and that many of his jail clinic and triage visits had been on a walk-in basis. Referrals to BTH were made based upon the jail provider's evaluations and recommendations following the jail clinic visits. In short, the record does not indicate that plaintiff requested any medical services regarding his injury during that time frame. Plaintiff presents no probative summary judgment evidence showing that he sought, but was denied, clinical or medical services between July 19, 2014, and January 30, 2015. Accordingly, no deliberate indifference is shown by a lack of medical records, standing alone, for those six months.

Although plaintiff contends that defendants all but ignored him after July 2014 until February 2015, and that BTH completely ignored his medical needs until he filed this lawsuit on June 23, 2015, his medical records belie those contentions. Plaintiff's medical records continue on January 30, 2015, when he was seen in clinic for complaints of left lower extremity pain. (Docket Entry No. 68, p. 69.) Plaintiff reported having burning pain in his left lower leg of a two-week duration. It was noted that he had not followed up with his last

BTH Orthopedics visit, and that he was taking ibuprofen he obtained from the commissary. The medical care provider ordered the scheduling of a BTH Orthopedics appointment, with a request for an MRI of the left Achilles area. *Id.*, p. 71. An x-ray taken at that time evinced no obvious acute bone injury. *Id.*, p. 72.

On February 8, 2015, plaintiff saw the jail triage nurse. (Docket Entry No. 68, pp. 74–76.) He reported increased pain and increased difficulty walking with crutches. He was then examined by jail physician Dr. Lu, who ordered ibuprofen and an "ASAP" referral appointment to the orthopedic clinic. In a subsequent progress note dated February 10, 2015, a jail physician ordered a consultation request with BTH Orthopedics, noting "old rupture L Achilles, needs reconstruction, please evaluate." (Docket Entry No. 65, pp. 17–18.)

Plaintiff was seen by jail physician Dr. Griffin on February 19, 2015. (Docket Entry No. 68, pp. 78–80.) Plaintiff reported difficulties showering and standing. Dr. Griffin recommended that he be moved to handicapped housing and be provided a wheelchair for walking long distances. Ibuprofen was ordered for pain relief. On February 25, 2015, jail physician Dr. Guice changed plaintiff's pain reliever from ibuprofen to naproxen, and noted that plaintiff had been seen in the Harris County Sheriff's Office Orthopedics Clinic the day before. A referral to BTH Orthopedics had been recommended. *Id.*, pp. 82–83.

Plaintiff was again seen by the triage nurse on March 9, 2015, following his altercation with another inmate. *Id.*, pp. 84–85. Plaintiff reported that his left leg was run over by another inmate's wheelchair during the altercation and that he was in pain. He was

examined by jail physician Dr. Shelton, who ordered an ankle splint and referred plaintiff for an orthopedics clinic visit. *Id.*, pp. 86–88.

Plaintiff was seen by BTH Orthopedics on March 13, 2015. *Id.*, p. 89. A weak plantar flexion was noted, and plaintiff was reported as wanting surgery because "the injury never healed." Jail physician Dr. Lu followed up with plaintiff on March 25, 2015, and noted a limited range of motion in the left Achilles. Tramadol was prescribed for pain relief, and a referral to orthopedics was made. *Id.*, pp. 92–94.

The medical records next show that plaintiff was seen in BTH Orthopedics on April 14, 2015. He reported medial ankle pain that began six months ago, and that he often had to walk on his heel. The physician noted that plaintiff was generally able to ambulate the clinic area. A diagnosis of posterior tibialis tendinitis was made. An MRI of the ankle was ordered, and plaintiff was referred for physical therapy. The chart notes that the case was discussed at length, and that plaintiff was to return in two months. (Docket Entry No. 68, pp. 97–99.)

Plaintiff saw the jail triage nurse on April 24, 2015, complaining of severe pain. (Docket Entry No. 68, pp. 100–01.) His chart reflects the following:

> Patient presented to clinic stating he has pain to his left foot. Patient states he does not want to pay medical for an ongoing problem he has. Patient became very hostile with nurse and was coming toward nurse and was asked to leave clinic if he was not going to see the doctor. [An officer] from second floor was called and patient left clinic stating he was not going to see MD because his foot pain is our problem. Patient states he will write it up and he ain't paying nothing and hopped out of clinic on his crutches.

15

*Id.*

On June 13, 2015, a jail medical provider examined plaintiff and noted that he was ambulating on crutches with limited left foot range of motion. Plaintiff stated that he was awaiting surgery on his left foot. He was prescribed tramadol and told to return for a refill if the surgery had not yet been done. *Id.*, pp. 101–04. Plaintiff returned for a refill on July 4, 2015, reporting that he had an MRI the day before and that the results would determine whether or not he wanted surgery. *Id.*, pp. 106–07.

The medical records show that plaintiff was seen in BTH Orthopedics on July 7, 2015. *Id.*, pp.109. The physician was of the opinion that plaintiff's left Achilles was intact and that he was experiencing tendinitis. Physical therapy had been recommended, but plaintiff stated he refused to go because, "I can't walk, man." The physician noted that plaintiff was "[v]ery adamant that he have surgery." *Id.* The MRI results indicated an intact Achilles with scarring and some inflammation around the posterior tibialis tendon. *Id.*, p. 110. The physician made the following entry in plaintiff's chart:

> We had along discussion today regarding treatment strategies. He is very adamant that he have surgery but I discussed with him that I do not think this is the right strategy at this time, given that his Achilles is intact and his symptoms are more suggestive of tendinitis. I discussed the natural history of tendinitis and that therapy can speed his recovery. I will refer him to [physical therapy] again and strongly encouraged him to participate. He reluctantly agreed. We will see him back in 6 weeks to see how he has responded to therapy.

*Id.*, pp. 110–111.

Jail medical records reflect that plaintiff was involved in an inmate altercation on July 8, 2015. He refused treatment and stated that he was okay. *Id.*, p. 112. He was then seen by the jail physician, Dr. Lu, for complaints regarding his foot. Plaintiff reported burning pain in the foot, for which he was prescribed indomethacin and tramadol. Dr. Lu noted that plaintiff no longer needed handicapped housing, and ordered his return to general population. *Id.*, pp. 114–116. Plaintiff requested a second opinion as to his left Achilles tendon, and the physician ordered the scheduling of a second opinion from LBJ General Hospital Orthopedics. *Id.*, pp. 117–118.

The next day, July 9, 2015, plaintiff was seen in jail triage following a fall in the showers. *Id.*, p. 119. He was evaluated by Dr. Henson, who noted that plaintiff earlier had used his crutches as a weapon in an altercation with another inmate. When Dr. Henson informed him that he would need to use a walker instead of crutches, plaintiff became angry and started cursing. *Id.*, pp. 120–21. X-rays of plaintiff's neck and skull were ordered, but no abnormalities were found. *Id.*, pp. 123–24. Plaintiff underwent a health assessment on July 20, 2015, and was noted as ambulatory with a walker and wearing a boot on his left leg. Plaintiff reportedly voiced no complaints or discomfort and was not distressed. (Docket Entry No. 68-1, p. 3.) On July 27, 2015, plaintiff complained of dental pain, and was provided ibuprofen and antibiotics until he could be seen by the dentist. *Id.*, 8–9. A broken tooth was noted, which was subsequently extracted by a dentist on August 18, 2015, without incident. *Id.*, pp. 18–20.

Plaintiff went to physical therapy at the Quentin Mease Physical Therapy Clinic on August 11, 2015. A plan was developed for plaintiff to attend weekly physical therapy sessions, augmented with self-initiated exercises at jail. He was noted to have good motivation. *Id.*, p. 12.

Plaintiff complained of pain to the triage nurse on August 14, 2015, and was seen in clinic on August 18, 2015. *Id.*, pp. 15, 21. On August 18, 2015, plaintiff went to BTH Orthopedics, where atrophy of the left calf was noted. Orders were placed for plaintiff to continue weekly physical therapy for strengthening and increasing range of motion. He was told to return for follow-up in 12 to 16 weeks. *Id.*, p. 23. He returned on November 10, 2015, and was sent to the Quentin Mease Physical Therapy Clinic for a medial arch support and an ankle brace. Physical therapy was ordered to continue. *Id.*, p. 31.

Plaintiff was involved in another inmate altercation on October 29, 2015. He refused medical evaluation and verbalized no complaints. *Id.*, p. 29. He further refused triage evaluation for pain on October 9, 2015, and on November 14, 2015. *Id.*, pp. 31–32. Plaintiff's medical care through Harris County appears to end at that point.[1]

After reviewing the record and the applicable law, the Court concludes that Harris County's motion and supplemental motion for summary judgment based on deliberate

---

[1] The Court takes judicial notice of public state court records which show that plaintiff was found guilty of murder and sentenced to 58 years incarceration on December 4, 2015. He was transferred from Harris County Jail to the Texas Department of Criminal Justice shortly thereafter, and is currently incarcerated at the Alfred Hughes Unit in Gatesville, Texas.

indifference should be granted. The competent summary judgment evidence shows that plaintiff was not the victim of deliberate indifference to his serious medical needs as defined by the case law construing section 1983 and the Fourteenth Amendment. Nor does plaintiff raise a genuine issue of material fact for trial. Plaintiff was provided medical care and treatment on a regular basis, was sent to specialists and specialty clinics for evaluation and treatment as ordered, and was provided physical therapy and medical equipment as ordered. That his injury did not resolve according to his expectations and that he is still experiencing pain and functional difficulties, while unfortunate, does not evince deliberate indifference. In particular, that his physicians and specialists opted to pursue a non-operative plan of treatment over invasive surgery does not constitute deliberate indifference. In short, plaintiff's dissatisfaction with his medical treatment and outcome is not an issue of federal constitutional dimension under the Fourteenth Amendment and section 1983.

Plaintiff fails to produce probative evidence demonstrating that defendants or his medical care providers "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for serious medical needs." *Domino*, 239 F.3d at 756. Defendant Harris County's motion and supplemental motion for summary judgment based on plaintiff's allegations of deliberate indifference (Docket Entries No. 64, 67) are **GRANTED** and plaintiff's claims for deliberate indifference are **DISMISSED WITH PREJUDICE**.

## VI. CONCLUSION

The motions and supplemental motion for summary judgment (Docket Entries No. 50, 64, 67) are **GRANTED** and this case is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DENIED AS MOOT**.

**SIGNED** at Houston, Texas on the 13th day of March, 2017.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE